**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| DR. BRITTANEY LOTT | |
| Plaintiff, | |
| v. | Civil Action File No. |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA and DR. MICHELLE KRUPP, in her individual capacity, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Dr. Brittaney Lott ("Dr. Lott" or "Plaintiff") files this Complaint for Equitable Relief and Damages against Defendant Board of Regents of the University System of Georgia ("Board of Regents") and Dr. Michelle Krupp ("Dr. Krupp"), (collectively "Defendants"), showing the Court the following:

### INTRODUCTION

1.     This is an action for race discrimination and retaliation in violation of 42 U.S.C. § 1981 ("§ 1981"), through 42 U.S.C. § 1983 ("§1983"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, through § 1983.

1

2.     Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement, compensatory damages, punitive damages, and attorney's fees and costs of litigation.

## JURISDICTION AND VENUE

3.     Plaintiff's claims under Title VII and § 1981 present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

4.     Plaintiff is a resident of South Carolina and submits herself to the jurisdiction of this Court.

5.     This Court is a proper venue of the Plaintiff's claims under 28 U.S.C. 1391(b), because the unlawful conduct giving rise to these claims occurred within the Southern District of Georgia.

## THE PARTIES

6.     Defendant Board of Regents is the governing authority over higher education in Georgia. Defendant transacts business in Augusta, Georgia.

7.     Defendant Board of Regents is subject to the Court's jurisdiction and may be served with process at 270 Washington Street, SW, Atlanta, GA 30334.

8.     At all times relevant to this matter, Plaintiff was an employee of Defendant Board of Regents as defined by Title VII.

9.     Defendant Board of Regents is an employer as defined by Title VII.

2

10. Defendant Dr. Krupp is subject to the Court's jurisdiction and may be served with process at 4319 Sabal Drive, Evans, Georgia 30809-7274.

11. Defendant Dr. Krupp is or was employed as the Associate Dean for Faculty Development at the Medical College of Georgia at Augusta University, and at all times relevant to this matter, Dr. Krupp was Plaintiff's supervisor.

## ADMINISTRATIVE PROCEEDINGS

12. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 14, 2025.

13. On May 1, 2026, the EEOC issued Plaintiff her notice of right to sue.

14. All administrative prerequisites for filing suit on Plaintiff's Title VII claims have been satisfied.

15. Plaintiff timely files this lawsuit within 90 days of receiving the EEOC notice of right to sue.

## FACTUAL ALLEGATIONS

16. Dr. Lott is a black woman.

17. On or about March 5, 2023, Dr. Lott was hired by Defendant as a Research Associate with Augusta University's Medical College of Georgia ("MCGA").

18. In approximately November 2023, Dr. Lott was promoted by Dr. Michelle Krupp ("Dr. Krupp") to Research Manager.

3

19. In approximately September 2024, Dr. Lott completed her PhD in Business Administration.

20. At this time, Dr. Lott was the only black employee in Dr. Krupp's unit.

21. Employees of MCGA are promoted to Associate Professor when they complete their PhDs.

22. Dr. Krupp, acting under of color of law did not extend the Associate Professor promotion opportunity to Dr. Lott after she completed her PhD.

23. Rather, Dr. Krupp gave Dr. Lott additional assignments that were outside the scope of her position without a commiserate promotion or increase in pay.

24. Dr. Krupp would delay or avoid meetings with Dr. Lott to discuss advancement opportunities.

25. During conversations, Dr. Krupp often berated Dr. Lott, spoke in a condescending, disrespectful manner, and pointed her finger at Dr. Lott's face.

26. Dr. Krupp treated Dr. Lott less favorably than her white co-workers.

27. In approximately October 2024, Dr. Lott requested the help of Dean Michael Brands ("Dean Brands"), who met with both Dr. Lott and Dr. Krupp to help mediate the issues stemming from the treatment to which Dr. Krupp subjected Dr. Lott.

28. During their meeting, Dean Brands witnessed Dr. Krupp speaking condescendingly to Dr. Lott.

29. Following the meeting, in approximately October 2024, Dr. Lott filed a complaint regarding Dr. Krupp's conduct with human resources.

30. In approximately November 2024, Dr. Krupp assigned Dr. Lott an unrealistic six (6) week deadline for a 5-Year Report.

31. Dr. Lott again filed a complaint with Human Resources regarding the unrealistic timeframe for the annual report completion.

32. On or about February 17, 2025, after receiving no support and no resolution to her complaints, Dr. Lott met with MCGA's EEOC Officer, Stephen Goldberg ("Mr. Goldberg"), to file a complaint of discrimination against Dr. Krupp.

33. During her meeting with Mr. Goldberg, he stated that he "really liked" Dr. Krupp and dismissed Dr. Lott's complaint that she was being targeted as the only Black employee in the department.

34. On or about February 27, 2025, Dr. Krupp rated Dr. Lott poorly on her annual review and placed Dr. Lott on a Performance Improvement Plan (PIP) with unrealistic expectations given its two-week completion deadline.

35. On or about February 28, 2025, Dr. Lott again met with Dean Brands to complain of and seek a solution for the discrimination and retaliation to which Dr. Krupp subjected her.

36.     However, despite her repeated complaints, Defendant took no action to correct or prevent the discrimination and retaliation to which Dr. Krupp subjected Dr. Lott.

37.     On March 6, 2025, Dr. Lott had a virtual meeting with Dr. Krupp and the Vice-President of Hunman Resources, Deana Pickett, to discuss her performance improvement plan.

38.     As a follow up to the meeting, on March 14, 2025, Dr. Krupp issued a written warning to Dr. Lott listing certain "performance concerns."

39.     One of the "performance concerns" Dr. Krupp listed in the written warning was that Dr. Lott "claimed the PIP was race based" and "made comments about involving legal counsel and filing complaints with the EEOC and HR."

40.     Dr. Krupp's March 14, 2025, written warning also instructed Dr. Lott to "refrain from bringing this [i.e. complaints of race discrimination] up so that we can work towards a professional dn collegial environment."

41.     Dr. Lott filed an EEOC Charge on March 14, 2025, asserting claims of discrimination on the basis of race and retaliation based on her protected complaints.

42.     On April 1, 2025, Defendant terminated Dr. Lott's employment.

43.     In the termination letter, Dr. Krupp again cited that Dr. Lott "repeatedly claimed that the PIP was retaliatory, and race based" and "made comments about

involving legal counsel and filing complaints with the EEOC and HR" as one of the "performance concerns" that justified her termination.

44.    Defendants' proffered reasons for terminating Dr. Lott are a pretext for unlawful discrimination and retaliation.

45.    In the alternative, Dr. Lott's race was a motivating factor in Defendants' decision to terminate her employment.

46.    As a result of Defendants' unlawful conduct, Dr. Lott has suffered loss of income and benefits, emotional distress, mental anguish, inconvenience, humiliation, and other indignities.

47.    All actions taken by Dr. Krupp as described herein were accomplished under color of state law.

48.    At the time of the events alleged herein, the law was clearly established such that Defendants had fair warning that the Fourteenth Amended to the United States Constitution precludes a public employer from discriminating against an employee in the terms and conditions of employment because of the employee's race.

49.    Defendants' decision to deny Plaintiff a promotion, disproportionately punish her with unrealistic deadlines, and terminate her employment amounts to daily violations of the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution, for which Defendants are liable through 42 U.S.C. § 1983.

## COUNT I

### DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq.*
**(against Board of Regents)**

50.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

51.     Plaintiff is an "employee" as defined by Title VII, 42 § U.S.C. § 2000e et seq.

52.     Defendant Board of Regents is an "employer" as defined by Title VII, 42 U.S.C. § 2000e et seq.

53.     Defendant Board of Regents discriminated against Plaintiff because of her race by failing to promote Plaintiff to Associate Professor after receiving her PhD as was the practice with employees outside Plaintiff's race.

54.     Defendant Board of Regents discriminated against Plaintiff by subjecting her to a hostile work environment because of her race by giving her assignments outside the scope of her position, setting intentionally impossible deadlines, berating her, and delaying and avoiding meetings with her all while treating her white co-workers more favorably.

55.    Defendant Board of Regents discriminated against Plaintiff by terminating her employment because of her race.

56.    Defendant Board of Regents' stated reason for terminating Plaintiff's employment is pretext for racial discrimination.

57.    In the alternative, Plaintiff's race was a motivating factor in Defendant Board of Regents' decisions to deny her a promotion to Associate Professor, subject her to a hostile work environment, and terminate her employment.

58.    Defendant Board of Regent's discriminatory treatment and termination of Plaintiff violates Title VII and entitles Plaintiff to all appropriate relief provided under the statute.

59.    Defendant Board of Regent's actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard of the harm caused to Plaintiff and were in derogation of his federally protected rights.

60.    As a result of Defendant Board of Regent's discriminatory treatment and termination of Plaintiff, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

61.    Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages,

punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT II
## DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. § 1981 THROUGH 42 U.S.C. § 1983
## (against Dr. Krupp)

62. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

63. It is unlawful under 42 U.S.C. § 1981, through 42 U.S.C. § 1983, to intentionally discriminate against an employee based on the employee's race.

64. At the time of the events alleged herein, the law was clearly established such that Dr. Krupp had fair warning that the Fourteenth Amended to the United States Constitution precludes a public employer from discriminating against an employee in the terms and conditions of employment because of the employee's race.

65. Dr. Krupp discriminated against Plaintiff because of her race by failing to promote Plaintiff to Associate Professor after receiving her PhD as was the practice with employees outside Plaintiff's race.

66. Dr. Krupp discriminated against Plaintiff by subjecting her to a hostile work environment because of her race by giving her assignments outside the scope of her position, setting intentionally impossible deadlines, berating her, and delaying

and avoiding meetings with her all while treating her white co-workers more favorably.

67.     Dr. Krupp discriminated against Plaintiff by terminating her employment because of her race.

68.     Dr. Krupp's stated reason for terminating Plaintiff's employment is pretext for racial discrimination.

69.     Dr. Krupp's discriminatory treatment and termination of Plaintiff violates §1981, through §1983, and entitles Plaintiff to all appropriate relief provided under the statute.

70.     Dr. Krupp's actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard of the harm caused to Plaintiff and were in derogation of his federally protected rights.

71.     As a result of Dr. Krupp's discriminatory treatment and termination of Plaintiff, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

72.     Pursuant to § 1981, through § 1983, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1981, and all other relief recoverable under § 1981.

## COUNT III
## INTENTIONAL RACE DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH 42 U.S.C. § 1983
### (against Dr. Krupp)

73.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

74.     It is unlawful Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for a state official to intentionally discriminate against Plaintiff based on her race.

75.     By virtue of her role as Associate Dean of Faculty Development, the Board of Regents has empowered Dr. Krupp with policymaking and final decision-making authority.

76.     Dr. Krupp made it Augusta University's policy to discriminate against Black employees when she denied Dr. Lott a promotion to Associate Professor, subjected her to a race-based hostile work environment, issued her disproportionate discipline and unattainable goals, and terminated her employment because of her race.

77.     In addition, Dr. Krupp's discriminatory discipline, promotion denial, and termination continue to negatively impact Dr. Lott's career and income advancement opportunities.

78.     Dr. Krupp's conduct as described herein was accomplished under color of state law.

12

79.     At the time of the events alleged herein, the law was clearly established such that the Dr. Krupp had fair warning that under the Fourteenth Amendment to the United States Constitution a public employer may not discriminate against an employee in the terms and conditions of their employment because of race.

80.     Dr. Krupp's decision to disproportionately punish, deny a promotion and terminate Dr. Lott due process amounts to daily violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, for which Dr. Krupp is liable through 42 U.S.C. § 1983.

81.     As a direct and proximate result of Dr. Krupp's unlawful discrimination, Dr. Lott has suffered loss of income and benefits, emotional distress, mental anguish, inconvenience, humiliation, and other indignities.

82.     Pursuant to 42 U.S.C. § 1983, Dr. Lott is entitled to damages for violations of her rights under the Fourteenth Amendment to the United States Constitution, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, attorney's fees, and costs of litigation and all other relief recoverable under the Fourteenth Amendment and 42 U.S.C. § 1983.

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL
RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq.***
**(against Board of Regents)**

83.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

84.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

85.    Plaintiff engaged in protected activity under Title VII by making internal complaints to Defendant alleging racial discrimination and by filing a charge of discrimination with the EEOC.

86.    Defendant Board of Regents was aware of Plaintiff's internal complaints of race discrimination, Plaintiff's intent to file a chare of discrimination, and that Plaintiff did file a charge of discrimination on or about March 14, 2025.

87.    Defendant Board of Regents terminated Plaintiff's employment because of her protected complaints in violation of Title VII.

88.    Defendant Board of Regents' actions, in subjecting Plaintiff to retaliation for engaging in protected activity by complaining of, and opposing, race discrimination, constitute unlawful intentional retaliation in violation of Title VII.

89.    Defendant Board of Regents' actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard of the harm caused to Plaintiff and were in derogation of his federally protected rights.

90.    As a result of Defendant Board of Regents' unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

91.     Pursuant to Title VII, Plaintiff is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to Title VII, and all other relief recoverable under Title VII.

**COUNT V**
**RETALIATION IN VIOLATION OF**
**42 U.S.C. § 1981 THROUGH 42 U.S.C. § 1983**
**(against Dr. Krupp)**

92.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

93.     It is unlawful under 42 U.S.C. § 1981, through 42 U.S.C. § 1983, to intentionally discriminate against an employee based on the employee's race.

94.     Plaintiff engaged in protected activity under § 1981, through § 1983, by making internal complaints to Defendant alleging racial discrimination and by filing a charge of discrimination with the EEOC.

95.     Dr. Krupp was aware of Plaintiff's internal complaints of race discrimination, Plaintiff's intent to file a chare of discrimination, and that Plaintiff did file a charge of discrimination on or about March 14, 2025.

96.     By virtue of her role as Associate Dean of Faculty Development, the Board of Regents has empowered Dr. Krupp with policymaking and final decision-making authority.

97.    Dr. Krupp made it Augusta University's policy to retaliate against Black employees when she issued her disproportionate discipline and unattainable goals and terminated her employment because of her protected complaints in violation of § 1981 and § 1983.

98.    In addition, Dr. Krupp's discriminatory discipline and termination continue to negatively impact Dr. Lott's career and income advancement opportunities.

99.    Dr. Krupp's conduct as described herein was accomplished under color of state law.

100.    Dr. Krupp's actions, in subjecting Plaintiff to retaliation for engaging in protected activity by complaining of, and opposing, race discrimination, constitute unlawful intentional retaliation in violation of § 1981, through § 1983.

101.    Dr. Krupp willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

102.    As a result of Dr. Krupp's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

103.    Pursuant to § 1981, through § 1983, Plaintiff is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory

damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1981, and all other relief recoverable under Section 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a)   A declaration that Defendants violated the rights of Plaintiff under the federal statutes listed above;

(b)   A permanent injunction against Defendants enjoining Defendants from further violations of the federal statutes listed above;

(c)   Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for their unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)   Reinstatement to Plaintiff's former position with Defendant, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e)   Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's garden variety emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

17

(f) Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Dr. Krupp for her conduct toward Plaintiff and deter Dr. Krupp from similar conduct in the future;

(g) Reasonable attorneys' fees and costs.

(h) Other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted on this 30th day of July 2026.

LEGARE, ATTWOOD & RAGAN

/s/ *Amelia A. Ragan*
Amelia A. Ragan
Georgia Bar No. 831387
aaragan@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 515
Decatur, Georgia 30030
Telephone: (470) 823-4000